# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-0596V
UNPUBLISHED

| | |
|---|---|
| AARON WESO,<br><br>                      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                      Respondent. | Chief Special Master Corcoran<br><br>Filed: July 5, 2022<br><br>Special Processing Unit (SPU);<br>Ruling on Entitlement; Influenza<br>(Flu); Shoulder Injury Related to<br>Vaccine Administration (SIRVA). |

*Jerome A. Konkel*, Samster, Konkel & Safran, S.C., Milwaukee, WI, for Petitioner.

*Claudia Barnes Gangi*, U.S. Department of Justice, Washington, DC, for Respondent.

## RULING ON ENTITLEMENT[1]

On April 23, 2019, Aaron Weso filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act") alleging that he suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on November 30, 2017. Petition, ECF No. 1 at 3, 6. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that a preponderance of evidence supports the conclusion that Petitioner's pain and reduced range of motion were limited to his left shoulder, and that Petitioner is otherwise entitled to compensation for a Table SIRVA claim.

## I. Relevant Procedural History

On August 24, 2020, Respondent filed a Rule 4(c) Report disputing Petitioner's entitlement to a Vaccine Program award. ECF No. 26. Specifically, Respondent argued that Petitioner failed to show that he suffered a Table injury because his pain was not limited to his vaccinated shoulder. Rule 4(c) Report at 6-7. Respondent also argued that Petitioner was unable to establish causation-in-fact under the relevant standard. *Id.* at 7-8. Petitioner filed a status report on September 28, 2020 addressing these issues. ECF No. 28. However, on January 15, 2021, Respondent indicated that he would continue to contest entitlement. ECF No. 30.

On March 22, 2021, Petitioner filed a Motion for a Ruling on the Record ("Motion") arguing that he has established entitlement to compensation for SIRVA. ECF No. 32. Petitioner specifically asserted that his pain and reduced range of motion were limited to his vaccinated shoulder. *Id.* at 4-6.

Respondent filed his Response to Petitioner's Motion on April 19, 2021 ("Response") recommending that entitlement to compensation be denied. ECF No. 33. Respondent again argued that Petitioner's pain and reduced range of motion were not limited to his left shoulder and that his description of "constant burning" pain "suggests radiating pain, which is not associated with SIRVA." *Id.* at 6. Respondent also maintained that "[P]etitioner did not develop limitations in range of motion in his left shoulder following receipt of the flu vaccination." Response at 6.

## II. Relevant Factual Evidence

I have fully reviewed the evidence, including all medical records, Petitioner's affidavit, and the parties' briefing. I find most relevant the following:

- Petitioner received a flu shot in his left deltoid on November 30, 2017. Ex. 2 at 1; Ex. 3 at 4, 87. Petitioner was incarcerated at Green Bay Correctional Institute ("GBCI") at the time of vaccination. *See* Ex. 3 at 4.

- In his affidavit, signed on April 17, 2019, Petitioner avers that on December 1, 2017, he "awoke with a throbbing and achy pain at the site of the [flu] shot." Ex. 1

at 1.  He further avers that he submitted a request to be seen by the GBCI's Health Services Unit ("HSU") "due to sharp pain." *Id.*

- Petitioner presented to the HSU on December 4, 2017 (four days post-vaccination) with complaints of sharp pain in his left shoulder that had been present for three-to-four days. Ex. 3 at 26. The progress note charting this visit indicates that Petitioner had full range of motion and "denie[d] any injury to shoulder, just started hurting one day." *Id.* The progress note further indicates that Petitioner received a flu shot on November 30, 2017 in his left deltoid. *Id.* Petitioner was given an ice bag and was instructed to take Tylenol and ibuprofen. *Id.*

- On December 7, 2017, Petitioner again presented to the HSU with complaints of leg pain after working out. Ex. 3 at 26-27. He also complained of numbness and tingling in his toes. *Id.* at 27. Although there is no indication that his left shoulder was examined, the progress note reflects that he had previously been given Tylenol and ice for his shoulder and had not experienced relief. *Id.*

- Petitioner presented to the HSU on December 18, 2017 for ongoing shoulder pain. Ex. 3 at 27. The record documenting this visit indicates that Petitioner rated his pain as a six on a ten-point scale and had full range of motion. *Id.* He was assessed with "alt[eration] in comfort" of the left shoulder and was advised to continue taking acetaminophen and ibuprofen. *Id.*

- Also on December 18, 2017, Petitioner submitted a written request to amend his medical records because "medical staff confused a prior statement I made." Ex. 3 at 96. In his request, Petitioner explained that a nurse informed him that his left shoulder pain was a "muscle issue." *Id.* Based on this information, Petitioner "attempted to lightly work out figuring it might have been a crink or something but it didn't help." *Id.*

- On January 19, 2018, Petitioner was again seen in the HSU for left shoulder pain and ongoing left calf pain. Ex. 3 at 25. A shoulder examination revealed active range of motion with pain at the extremes. *Id.* Petitioner was assessed with left deltoid musculoskeletal pain. *Id.*

- A form entitled "Prescriber's Orders" indicates that an order for a physical therapy consultation was placed on February 12, 2018. Ex. 3 at 41.

- Petitioner returned to the HSU on March 2, 2018 with flu-like symptoms. Ex. 3 at 23-24. There is no indication that he complained of left shoulder pain during this visit. *Id.*

3

- Petitioner presented to the HSU on May 21, 2018 for "terrible" left shoulder pain that worsened when raised above shoulder level. Ex. 3 at 22. The progress note documenting this appointment indicates that Petitioner's symptoms started "last late Nov[ember]" after receiving a flu shot. *Id.* The progress note further indicates that Petitioner's symptoms were "likely AC [acromioclavicular] j[oin]t related or rotator cuff. *Id.*

- On June 27, 2018, Petitioner again presented to the HSU. Ex. 3 at 22, 21. The note documenting this visit indicates that despite being handcuffed behind his back, he was "able to roll shoulders." *Id.* at 22.

- In a letter dated July 2, 2018 and addressed to the HSU supervisor, Petitioner stated that the therapist who evaluated his shoulder diagnosed him after only two minutes "just by talking to me and not doing any "indepth [sic] investigation i.e.[,] tests, etc." Ex. 5 at 6. Petitioner further stated that the therapist's impressions contradicted the physician's assessment and expressed concern that his shoulder injury had not resolved. *Id.* He concluded his letter by noting that his pain had turned into a "constant burning." *Id.*

- Petitioner underwent an initial physical therapy evaluation on July 3, 2018. Ex. 3 at 59-63. The notes documenting this appointment indicate that Petitioner rated his pain as a seven on a ten-point scale. *Id.* at 59. Treatment goals included the restoration of Petitioner's range of motion in his left shoulder and he was assessed with shoulder impingement syndrome. *Id.* at 60, 62.

- On August 7 and August 11, 2018, Petitioner filled out forms stating that he continued to experience shoulder symptoms and "no one is taking my pain seriously." Ex. 3 at 172, Ex. 5 at 4; Ex. 3 at 170; Ex. 5 at 2.

- A letter from the HSU, dated August 13, 2018, noted that Petitioner was on the waitlist for physical therapy and that his treatment would resume once he was moved to GBCI's general population unit. Ex. 3. at 94. The letter further indicated that Petitioner should continue his exercises and take ibuprofen and Tylenol. *Id.*

- On August 13, 2018, Petitioner was examined for his left shoulder pain. Ex. 3 at 19. The record documenting this visit indicates that Petitioner correlated his symptoms with receipt of the flu shot. *Id.*

- Petitioner was transported to St. Vincent Hospital's emergency room on August 17, 2018 after falling from a bunk bed. Ex. 3 at 45. The medical notes indicate that Petitioner jammed his finger and struck his head, suffering from a loss of consciousness for an unknown period. *Id.* There is no indication that Petitioner complained of left shoulder pain during his visit to the emergency room. *Id.*

4

- Petitioner presented to the HSU on September 7, 2018 concerning pain in his right wrist that extended to his shoulder. Ex. 3 at 13.

- After his release from GBCI, on October 23, 2018, Petitioner presented to A.P.N.P. Sue Weso for left arm pain. Ex. 4 at 6. The medical note indicates that he "got a flu shot in the left arm last [year] and he continues to have pain." *Id*. On exam, Petitioner was determined to have soreness "on the left deltoid in the body of the muscle" and reduced range of motion in his left arm. *Id*. at 7.

- On January 9, 2019, Petitioner presented to A.P.N.P. Sarah Harkey after suffering an arm injury. Ex. 4 at 4. The medical note indicates that Petitioner "may have twisted his arm wrong, developed pain in left forearm near wrist and into shoulder." *Id*. Petitioner further reported hand numbness and tingling and noted that he had previously been diagnosed with muscle strain. *Id*. Petitioner was assessed with a left wrist injury. *Id*. at 5.

### III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A Petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If a claimant establishes that he has suffered a "Table Injury," causation is presumed.

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. See Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and aids to interpretation. 42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation

or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*

## IV. Findings of Fact Regarding Scope of Pain and Limited Range of Motion

Respondent argues that Petitioner has failed to establish that he suffered a Table injury because his symptoms were not limited to his left shoulder. Response at 6. In support of this position, Respondent cites to the singular record in which Petitioner describes his pain as "constantly burning." *See* Ex. 5 at 6. Respondent asserts that "[b]urning does not comport with the type of symptoms that are associated with SIRVA and instead suggests radiating pain." Response at 6.

In response, Petitioner attempts to distinguish "burning" from "radiating" by referring to the dictionary. *See* Reply at 2. However, I find that defining these terms is not necessary. Even if I were to determine that these sensations are related, a review of the other records reveals that in all other instances Petitioner reported general shoulder pain. A singular reference to a burning sensation does not indicate that Petitioner's pain was not limited to his left shoulder (and for purposes of calculating damages can be disregarded in any event).

In a further attempt to support his argument that Petitioner's symptoms were not limited to his vaccinated shoulder, Respondent points to Petitioner's January 9, 2019 appointment with A.P.N.P. Harkey. The medical note documenting this visit indicates that Petitioner complained of pain in his "left forearm near wrist and into shoulder," as well as numbness and tingling in his hands. Ex. 4 at 4. Although Respondent acknowledges that Petitioner related these symptoms to an on-the-job injury, he asserts that "[e]ither [P]etitioner's left shoulder pain described at this visit is related to the subject vaccination he received (which now included radiating symptoms and symptoms in other parts of his body outside of his shoulder) or [P]etitioner's left shoulder pain and other symptoms were related to his work incident," thereby limiting any award for damages. Response at 7.

There is nothing in the record that suggests that the symptoms Petitioner cited on January 9, 2019 are linked to his November 30, 2017 flu shot. First, Petitioner did not

mention his history of left shoulder issues during this visit, and there is no indication that he attributed his pain, numbness, or tingling to vaccination. Instead, Petitioner specifically recounted "grabbing material and . . . twist[ing] his arm wrong" only a few days earlier. Ex. 4 at 4. Given Petitioner's plausible attribution of his symptoms to a January 2019 work injury that occurred close-in-time to his quest for treatment, I find that it is more likely than not that his left wrist and shoulder pain, as well as his hand numbness and tingling, were unconnected to his SIRVA. These facts do not undermine Petitioner's showing of a SIRVA injury – at most, they establish a distinguishable injury that can be disregarded in determining damages in this case.

Respondent also argues that "[P]etitioner's most contemporaneous records to the vaccination" do not support his claim of experiencing reduced range of motion. Response at 6, n. 3. Admittedly, it is the case that in the immediate months following vaccination Petitioner was found to have manifested full range of motion of his left shoulder. However, this finding changed by Petitioner's July 3, 2018 initial physical therapy evaluation. Ex. 3 at 59-63. Indeed, Petitioner's treatment goals included a restoration of range of motion in his left shoulder. *Id.* at 62. Respondent apparently dismisses this evidence because it is contained in a record generated over seven months after Petitioner's vaccination. However, reductions in range of motion often lag after the initial injury by weeks or months, and I do not find that a SIRVA injury must *immediately* display range of motion limitations to be actionable.

Accordingly, preponderant evidence establishes that Petitioner's pain and reduced range of motion were sufficiently "limited" to his left shoulder for a favorable ruling on this SIRVA element.

## V.   Other Table Requirements and Entitlement

### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent has not contested that Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain his post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

### 2. Onset

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent does not dispute Petitioner has met this requirement. Additionally, I find that the evidence collectively establishes that his shoulder pain began within 48 hours of receiving the November 30, 2017 flu vaccine. There is no counterevidence undercutting Petitioner's contention that his pain began close-in-time to vaccination. *See, e.g.*, Ex. 3 at 26 (December 4, 2017 progress note documenting Petitioner's report of left shoulder pain and his receipt of the flu shot four days earlier). Accordingly, I find that Petitioner has met this criterion to establish a Table SIRVA.

### 3. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Although Respondent has noted that Petitioner attributed symptoms arising on or around January 2019 to a work injury, he has otherwise not contested that Petitioner meets this criterion, and there is no evidence in the record to the contrary. Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's left shoulder injury before January 2019.

### 4. Other Requirements for Entitlement

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed.

Thus, based upon all of the above, Petitioner has established that he suffered a Table SIRVA, satisfying all other requirements for compensation.[3]

---

[3] Because I have found that Petitioner has demonstrated a Table injury, there is no need to address Respondent's assertion that Petitioner has failed to establish actual causation.

8

## VI. Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A subsequent order will set further proceedings towards resolving damages.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master